## BOYD VS. ORTON.

O & L were joint indorsers of a promissory note, and L died a few days before its maturity; it was protested for non-payment, and O had due notice thereof, and the notary who protested the note made inquiries for three days before the note became due in the ward where L had resided, and learned of the fact of his death, and that he had no family except a wife, and that she had gone to Canada with her father; and he made inquiries of persons he thought would be most likely to know, whether any executor or administrator had been appointed on L's estate, and could not learn that any had been appointed; he then deposited two notices in the post office at Milwaukee, where L had resided and died, one directed to L, and the other directed to "L's executors or administrators." *Held*, That the notary was authorized to presume, from the information he had received, that L's family had no longer any residence in Milwaukee, and that he was not bound to go to the house where he had lived, to see if he could not find a servant there who had once lived with the deceased; and that the notary

had exercised due diligence to notify the representatives of L of the dishonor of the note.

It seems that notice of dishonor to one of several *joint* endorsers, is not sufficient to charge all.

APPEAL from the County court for *Milwaukee* county.

Action against the defendant as joint indorser of a promissory note with one Allison Lewis, who died a few days before its maturity, and the question was whether the holder of the note had used due diligence to notify the personal representatives of Lewis of its dishonor, the defendant *Orton* having received due notice. After the plaintiff had rested his case the defendant moved for a non-suit, the court overruled the motion and the defendant excepted. The facts proved and relied on by the plaintiff to show the exercise of due diligence are stated in the opinion of the court. It was proved on behalf of the defendant, that the notary who protested the note knew that Lewis & *Orton* had occupied an office in the city of Milwaukee over the banking office where he was employed, that he did not enquire of *Orton* where Lewis resided, that Lewis' name was in the city directory, and his residence was there set down as being at the south west corner of Clybourn and Fourth streets, and his place of business at Juneau Block. Verdict and judgment for the plaintiff, and the defendant appealed.

*E. Mariner* for appellant.

1. In order to charge either indorser both must be notified. Story on Prom. notes, § 308 ; *Sheppard vs. Hawley*, 1 Conn., 368 ; *Sayer vs. Beck*, 7 Watts & S., 383 ; *Bank vs. Root*, 4 Cow., 126 ; Edwards on Bills, 631—2. There is nothing in the facts in the case which makes it necessary to inquire into the diligence used by the notary. He knew that Lewis had been dead but a few days, that he was a resident of the city, and he knew where his office was. Service at either place, upon any person in charge of his affairs would have been good; and the presumption of law is, that

there was some one in charge both of his office and his house. These were the usual places to serve notice, and if he did not attempt to serve them at these places, it is for the plaintiff to show that there was no one there to receive it, and that sufficient service could not be made. *Stewart vs. Eden,* 2 Caines 121; *Merchant's Bank vs. Burch,* 17 Johns., 25; *Cayuga Bank vs. Bennett,* 5 Hill, 237, 324; *Willis vs. Green,* 5 Hill, 232; *Ransom vs. Mack,* 2 Hill, 587; 7 Wis., 161.

*Jenkins & Hickcox* for respondent.

1. Notice to one of several joint endorsers is notice to them all, and the appellant cannot object that notice was not given to the representatives of Lewis. *Porthouse vs. Parker,* 1 Campb., 82; *Harris vs. Clark,* 10 Ohio, 5; Byles on Bills, 338. 2. Due diligence was used to serve the representatives of Lewis with notice. All that the law requires, is the exercise, of diligence and that is equivalent to notice, and where the holder acts in good faith and upon credible information the liability of the indorser is fixed, although the holder may have been misled. Edwards on Bills, 609, 631, 648; Story on Prom. Notes, § 310, 264; Chitty on Bills, 486, 489. As to what is due diligence and what will excuse actual notice they cited, *Chapman vs. Lipscombe,* 1 Johns., 294; *Merchant's Bank vs. Birch,* 17 Johns., 25; *Ransom vs. Mack,* 2 Hill, 587; *Bank of Utica vs. Davidson,* 5 Wend., 387; *Bank of Utica vs. Bender,* 21 Wend., 645; *Carroll vs. Upton,* 2 Sandf. R., 171; *Rawdon vs. Redfield,* 2 Sandf. R., 177; *Hunt vs. Maybee,* 3 Seld., 266; *Tunstall vs. Walker,* 2 Sm. & M., 638.

*By the Court,* PAINE, J. This action was brought against the appellant as an indorser of a promissory note. The note was drawn payable "to the order of *J. J. Orton* and Alanson Lewis," and was indorsed by them. It was dishonored, and there is no dispute that the appellant received due notice But a short time before the note fell due, Lewis had died, and the appellant defends upon the ground that proper steps were

not taken to notify his representatives, claiming that thereby the appellant, as a joint indorser with him, was discharged. It was conceded on the argument, that when a note is indorsed by a partnership, notice to either will charge all; but the appellant denies that this rule prevails in respect to mere joint indorsers, and claims that both must be notified to charge. The authorities seem to sustain this rule. But we think in this case the evidence shows due diligence on the part of the notary to give notice to the representatives of Lewis, which is all that is required. He made inquiries for the period of three days before the note fell due; he learned that Lewis was dead, that he had no family except a wife, and that she had gone to Canada and was with her father; nor could he learn of any executors or administrators. He made these inquiries in the ward where Lewis had resided, and of persons who he thought, would be most likely to know. After this he deposited two notices in the post-office, at Milwaukee where Lewis had resided and died, one in an envelop addressed to Allison Lewis, and the other addressed to his executors or administrators. It is diffcult to understand what more could have been done. All that was suggested was, that the notice might have been left at the house where Lewis had resided; and this was based upon the testimony of the appellant, who said that after he returned from the east he went to the house where Lewis had lived, and the servant who had lived with Lewis was there, and remained there sometime afterwards. But this is far from showing that the house could then be regarded as the residence of Lewis' family; and there was no pretense that his wife ever returned there to live. Nor does the appellant himself state that this servant remained there in any capacity as servant or agent for the family. His testimony raises no presumption that the notice should have been left at the house. And we think that the notary after learning the facts that he did, was authorized to presume that the family was broken up, and had no longer any residence in Milwaukee, and he

was not bound to go to the house to see if he could perchance find a hired girl who had once lived with the deceased. It appeared subsequently that *Orton* himself was one of the executors of the will of Lewis, and *Orton* had notice of the dishonor of this note. But whether that would be sufficient to charge him with notice as executor, we shall not determine, being satisfied that the notary used due diligence to notify the representatives of Lewis.

The judgment is affirmed.